**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

AXIS INSURANCE COMPANY,

      Plaintiff,

v.

Case No. 6:14-cv-1520-Orl-37KRS

TMG ORANGE AVENUE, LLC;
TEAM MARKET GROUP, LLC; TEAM
MARKET GROUP, LLC; ONE SOUTH
ORANGE, LTD.; SCOOP BAR & GRILL,
LLC; KEYS TO THE CITY GLOBAL,
INC.; JOHN COOLEY; SAMUEL DADE;
KEITH MAWARDI; ROMI MAWARDI;
and DARIUS M. WASHINGTON, SR.
and TARCHELLE L. WASHINGTON, as
co-personal representatives of the
ESTATE OF JERRY SMITH, JR.,

      Defendants.

**ORDER**

This cause is before the Court on Plaintiff Axis Surplus Insurance Company's unopposed Motion for Final Summary Judgment (Doc. 89), filed April 10, 2015.

**INTRODUCTION**

Plaintiff requests that the Court enter an Order finding that Plaintiff "has no duty to defend or indemnify" the persons sued in a wrongful death action that is pending in the Ninth Judicial Circuit Court in and for Orange County, Florida, *Washington v. Scoop Bar & Grill, LLC*, Case No. 2014-CA-007970-O ("State Action"). (*See id.*) For the reasons set forth below, the Court finds that Plaintiff's Motion for Final Summary Judgment ("SJ Motion") is due to be denied with leave to reassert. Further, the Court will require Plaintiff to show cause why its claims against Defendants TMG Orange Avenue, LLC

("TMG Orange"), Team Market Group, LLC ("Team Delaware), Team Market Group, LLC ("Team Florida"), Scoop Bar & Grill, LLC ("Scoop"), Keys to the City Global, Inc. ("Keys"), Keith Mawardi, Romi Mawardi, John Cooley, and Samuel Dade (collectively, the "Tier Defendants") should not be dismissed for failure to perfect service of process.

## BACKGROUND

**I.   The State Action**

On June 30, 2014, Gavin Brown was a business invitee at Tier Nightclub ("Tier") when he allegedly used a weapon to kill another business invitee—Jerry Smith, Jr. ("June Event"). (*See* Doc. 68-1, ¶¶ 23–27; Doc. 84, ¶¶ 10.) Tragically, Mr. Smith was the 28-year-old father of five very young children ("Survivors"). (*See* Doc. 68-1, ¶¶ 24; *see also* Doc. 84, ¶ 7.) Seeking to recover the damages suffered by Mr. Smith's estate and his Survivors, Darius Washington, Sr. and Tarchelle Washington (as the Co-Personal Representatives of the Estate of Jerry Smith, Jr. ("Estate Representatives")) filed the State Action on July 14, 2014. (*See* Doc. 68-1 (citing Florida's Wrongful Death Act, § 768.18, Florida Statutes); *see also* Doc. 68, ¶ 29; Doc. 84, ¶ 10.)

The Estate Representatives' Complaint ("Estate Complaint") does not seek to recover damages from Mr. Brown; rather, it seeks damages from:

(1) the alleged owners and operators of Tier—Team Delaware, Team Florida, and Scoop (collectively, "Scoop Entities")—(*see* Doc. 68-1, ¶¶ 34–45);

(2) Keith and Romi Mawardi, who allegedly "were the sole decision makers within" the Scoop Entities regarding Tier's security plans (*id.* ¶¶ 66–73);

(3) Keys, which is the entity that allegedly agreed to provide security guards and services at Tier (*id.* ¶¶ 46–54);

2

>   (4)   John Cooley and Samuel Dade, who allegedly were responsible for providing security, supervising security personnel, and controlling the security operations at Tier on June 30, 2014—(*id.* ¶¶ 55–65); and
>
>   (5)   One South, which is the owner of "1 South Orange Building," where Tier was located on June 30, 2014 ("Property") (*id.* ¶¶ 28–33).

The Estate Representative's claims are based on allegations that these defendants were negligent in failing to: (1) "provide a reasonably safe premises" for Mr. Smith to visit; (2) warn Mr. Smith of "foreseeable criminal activity" on the Property; (3) provide sufficient security at the Property; (4) "prevent criminal activity" at the Property; and (5) "prevent injuries to persons lawfully on" the Property. (*See id.* ¶¶ 31, 32, 37, 38, 43, 44, 49, 50, 52, 53, 57, 58, 64; *see also* Doc. 84, ¶ 10.)

## II.   The Instant Action

Plaintiff initiated this action on September 18, 2014 (Doc. 1) alleging that it needs a declaration of its rights because—"in light of the allegations contained in the" Estate Complaint—Plaintiff was in doubt as to its "responsibilities" under Commercial General Liability Policy Number EAP779814-14 ("Policy").[1] (Doc. 68, ¶¶ 1, 26, 28, 39; *see* Doc. 89-1, pp. 5–45; Doc. 89-2; *see also* Doc. 89-1, ¶ 5 (authenticating copy of Policy).) Specifically, in its Second Amended Complaint, Plaintiff alleges that the Policy does not cover the State Action or the June Event due to Endorsement Number 8 (the "Battery Exclusion"). (*See* Doc. 68, ¶¶ 33–35, 40–45.) Plaintiff further alleges that Keith Mawardi, Romi Mawardi, the Scoop Entities, Keys, and Messrs. Cooley and Dade, are not "insureds" under the Policy. (*See id.* ¶¶ 46–49.)

---

[1] The Court promptly directed Plaintiff to file an Amended Complaint (Doc. 15), which Plaintiff did on October 10, 2014 (Doc. 23). Plaintiff then filed a Second Amended Complaint on January 26, 2015. (Doc. 68.)

3

South Orange and the Estate Representatives responded to Plaintiff's Second Amended Complaint, and the Estate Representatives asserted an affirmative defense.[2] (*See* Docs. 79, 84.) On April 10, 2015, Plaintiff filed its SJ Motion (Doc. 89), which it supported with the Affidavit of Steven L. Cucciniello. (*See* Doc. 89-1.) No Defendant has responded to the SJ Motion, and the deadline to do so passed on May 13, 2015. (Doc. 80, pp. 6–7.) Thus, the SJ Motion is now ripe for adjudication.

## LEGAL STANDARDS

**I.     Summary Judgment**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the movant makes such a showing, then a district court should grant the motion for summary judgment unless the non-moving party presents "affirmative evidence to show that a genuine issue of material fact exists." *See Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006); *see also* Fed. R. Civ. P. 56(c)(1). If the non-moving party provides no response to a summary judgment motion, then the district court may grant the unopposed motion after due consideration of the merits and the evidence presented. *See Benjamin v. SNF Holding Co.*, No. 14-13218, 2015 WL 1037109, at *2 (11th Cir. 2015) (noting that courts must consider the merits of an unopposed motion for summary judgment); *Howard v. Gee*, 538 F. App'x 884, 890 (11th Cir. 2013) (affirming denial of

---

[2] The only true affirmative defense asserted is that Plaintiff waived its coverage defenses by failing to comply with "conditions precedent." (*See* Doc. 84, ¶ 15 (citing § 627.426, Fla. Stat.).) The remainder of the purported affirmative defenses are simply denials of Plaintiff's claims. (*See id.* ¶¶ 16–22.)

unopposed motion for summary judgment where court gave "due consideration to the merits" of defendants' motion "and the evidence presented"); *see also* Fed. R. Civ. P. 56(e)(3) (providing for entry of summary judgment if a motion and supporting materials "show that the movant is entitled to it" and the opposing party "fails to properly address another party's assertion of fact").

## II.    Insurance Law

An insurer's duty to defend its insured is determined by comparing the terms of the insurance policy with the allegations asserted against its insured. *See Jones v. Utica Mut. Ins. Co.*, 463 So. 2d 1153, 1157 (Fla. 1985).[3] In making this comparison, courts must read the policy "'as a whole'" and must apply the "ordinary meaning" to terms that are not defined in the policy. *See Morales*, 714 F.3d at 1227 (quoting *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007)). Courts must not construe a policy against an insurer unless the "ordinary meaning" of the policy terms is "indefinite, ambiguous or equivocal." *See U.S. Fire Ins. Co. v. Morejon*, 338 So. 2d 223, 225 (Fla. 3d DCA 1976); *see also State Farm Mut. Auto Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986) (noting that strict construction against an insurer applies only "when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction"). If a court determines that the allegations against an insured do not trigger an insurer's broad duty to defend, then the court also should find that the more narrow duty to indemnify is not triggered. *See WellCare of Fla., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 16 So. 3d 904, 906 (Fla. 2d DCA 2009).

---

[3] The Court agrees with Plaintiff that Florida law controls in this diversity action. (*See* Doc. 89, p. 9; *see also* Doc. 68, ¶ 23; Doc. 84, ¶ 8.)

**THE POLICY**

**I.    Bodily Injury Coverage**

The occurrence-based Policy was effective from March 18, 2014 through March 18, 2015 ("Policy Period"),[4] and it was issued to TMG Orange. (*See* Doc. 89-1, p. 5.) Pursuant to the COMMERCIAL GENERAL LIABILITY FORM ("CGL Form"), Section I ("COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY"), Part 1 ("Insuring Agreement"), Plaintiff is obligated to "pay those sums that the **insured** becomes legally obligated to pay as damages because of '**bodily injury**' . . . to which this insurance applies."[5] (*See* Doc. 89-1, p. 26 (emphasis added to defined terms).) Plaintiff is given "the right and the duty to defend the **insured** against any '**suit**' seeking those damages," but is not given a duty "to defend the **insured** against any **suit** seeking damages for '**bodily injury**'" to which the Policy "does not apply." (*Id.* (emphasis added).) Section V of the CGL Form defines various pertinent terms, including "bodily injury" and "suit." (*See* Doc. 89-1, pp. 19, 22.) "**Bodily injury**" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time" (*see id.* at 19; *see also* Doc. 89-2, p. 16), and "**Suit**" is defined as "a civil proceeding in which damages because of 'bodily injury' . . . to which this insurance applies are alleged" (*see* Doc. 89-1, p. 22).

---

[4] (*See* Doc. 89-1, pp. 26–27 (providing that the insurance applies to bodily injury "only if" the bodily injury **occurs during the Policy Period**); *see also id.* at 21 (defining "occurrence" as "an accident").)

[5] The Coverage A Insuring Agreement of the CGL Form was replaced by endorsement "SI 00 01 03 08." (*See* Doc. 89-1, pp. 26–27.)

6

**II.    Insureds**

An "insured" is identified based on Section II ("Who is an Insured") of the CGL Form (*see id.* at 16–17) and certain Endorsements (*see* Doc. 89-2, pp. 5, 23, 34–40.) Section II defines "insured" as including: (1) the members of a limited liability company ("LLC") that is "designated in the Declarations" of the Policy, "but only with respect to the conduct of your business," and (2) the managers of such designated LLC, "but only with respect to their duties as your managers." (Doc. 89-1, p. 16.) Section II further provides that the "'employees,'" "'volunteer workers,'" and "'managers'" of a designated LLC are insureds, but only: (1) while such volunteer workers are "performing duties related to the conduct of your business;" (2) while such employees are acting "within the scope of their employment by you;" and (3) while such managers are "performing duties related to the conduct of your business." (*See id.*)

TMG Orange and "TMG Central Blvd, LLC dba Tier Nightclub" are designated as "Named" insureds pursuant to Endorsement 7. (*See id.* at 5.) One South is designated as an "Additional" Insured, "but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you" while you are a tenant. (*See id.* at 35, 37, 39.) Further, an exclusion concerning designated entities (Endorsement 17 ("Scoop Exclusion")) provides that the insurance does not apply to "'bodily injury' . . . arising directly or indirectly, out of" Scoop or the operations of Scoop. (*See id.* at 23.)

**III.    The Battery Exclusion**

The Battery Exclusion provides that the Policy does not apply to bodily injury "arising out of or resulting from:"

    **(a)**    "any actual, threatened or alleged assault or battery;"

    **(b)**    "the failure of any insured or anyone for whom any insured is or could be held legally liable to prevent or suppress any assault or battery . . . ;"

    \*    \*    \*

    **(e)**    the negligent employment, investigation, supervision, training, or retention "of a person for whom and insured is or ever was legally responsible and whose conduct would be excluded" by **(a)** or **(b)**;

    **(f)**    "the failure of any insured or anyone else for whom an insured is or could be held legally liable to build, construct, modify, repair, manage, use, secure or maintain any premises to prevent or suppress any assault or battery;" and

    **(g)**    "any other cause of action or claim arising out of or as a result of" **(a)**, **(b)**, **(e)**, or **(f)**.

(*See* Doc. 89-2, pp. 6–7.) The Battery Exclusion further provides that Plaintiff will "have no duty to defend or indemnify any claim, demand, suit, action, litigation," or other judicial proceeding "seeking damages, equitable relief," or injunctive relief where:

    **(a)**    any actual or alleged injury arises out of any combination of an assault or battery-related cause and a non-assault or battery-related cause.

    **(b)**    any actual or alleged injury arises out of a chain of events which includes assault or battery, regardless of whether the assault or battery is the initial precipitating event or a substantial cause of injury.

    **(c)**    any actual or alleged injury arises out of assault or battery as a concurrent cause of injury regardless of whether the assault or battery is the proximate cause of injury.

(*See id.* at 6–7.)

## DISCUSSION

Plaintiff argues that it has no duty to defend or indemnify the defendants named in the Estate Complaint because the Battery Exclusion "clearly and unambiguously"

excludes coverage for the asserted negligence claims.[6] (*See* Doc. 89, pp. 11–18). To support its argument, Plaintiff points to cases where courts have applied Florida law to preclude coverage for negligence claims based on exclusions that are similar to the Battery Exclusion. (*See id.* (discussing *Miami Beach Entm't, Inc. v. First Oak Brook Corp. Syndicate*, 682 So. 2d 161 (Fla. 3d DCA 1996), *Britamco Underwriter's, Inc. v. Zuma Corp.*, 576 So. 2d 965 (Fla. 5th DCA 1991).)

Upon review of the Estate Complaint, the pertinent law, and the Policy—particularly the extremely broad Battery Exclusion—the Court agrees with Plaintiff that the June Event and State Action are not covered by the Policy. The negligence claims asserted in the State Action depend on (and are not merely incidental to) Mr. Brown's alleged use of a "weapon" to end the life of Mr. Smith. Further, although the term "battery" is not used in the Estate Complaint, Mr. Brown's alleged conduct is plainly a battery under Florida law.[7] Finally, although couched in terms of negligence, it is apparent that the claims asserted in the Estate Complaint arose out of Mr. Brown's battery of Mr. Smith.[8]

---

[6] Plaintiff also argues that it is entitled to summary judgment because Scoop, Team Florida, and the Mawardis "are not listed in the declarations or added on as insureds anywhere within the Policy." (*See* Doc. 89, pp. 8, 18.) The Court declines to address this argument because it does not appear that these Defendants received notice of the SJ Motion or the Second Amended Complaint. (*See infra.*)

[7] In Florida, the term "battery" is not ambiguous as it is commonly understood to mean one person's intentionally harmful or offensive contact with another person. *See Founders Ins. Co. v. Cortes-Garcia*, No. 8:10-cv-2286-EAK-AEP, 2012 WL 2505917, at *6 (M.D. Fla. June 28, 2012) (citing *Quilling v. Price*, 894 So. 2d 1061, 1063 (Fla. 5th DCA 2005) and *Paul v. Holbrook*, 696 So. 2d 1311, 1312 (Fla. 5th DCA 1997)).

[8] The phrase "arising out of" also is not ambiguous, and when used in an exclusion clause it broadly precludes coverage for claims "originating from,'" "'growing out of,' 'flowing from,' 'incident to,' or 'having connection with,'" a specified excluding circumstance. *See Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 536 (Fla. 2005); *Am. Sur. & Cas. Co. v. Lake Jackson Pizza, Inc.*, 788 So. 2d 1096, 1099 (Fla. 1st DCA 2001); *TransAmerica Ins. Co. v. Snell*, 627 So. 2d 1275, 1276 (Fla. 1st DCA 1993) (holding that "arising out of . . . is a much more encompassing standard than

*See Essex Ins. Co. v. Big Top of Tampa, Inc.*, 53 So. 3d 1220, 1223 (Fla. 2d DCA 2011) (holding that officer's alleged use of excessive force was a "battery" even though claimant had couched his claim "in terms of negligence"); *Perrine Food Retailers, Inc. v. Odyssey Re (London) Ltd.*, 721 So. 2d 402, 403–04 (Fla. 3d DCA 1998) (affirming summary judgment for insurer based on broad battery exclusion); *First Oak*, 682 So. 2d at 162 (affirming entry of summary judgment in favor of insured where the "language of the policy exclusion was specifically tailored to preclude claims of negligence for premises liability); *Britamco*, 576 So. 2d at 965 (rejecting insured's argument that battery exclusion did not apply to claim that the insured negligently failed to provide adequate security at a bar).

Despite the foregoing analysis, the Court cannot enter judgment in favor of Plaintiff at this time. This is so because: (1) the SJ Motion did not address the waiver defense asserted by the Estate Defendants (*see* Doc. 84, ¶ 15; *see also* Doc. 89);[9] and (2) it appears that Plaintiff has not perfected service on the Tier Defendants.

Pursuant to Rules 4(c)(1) and 4(m), Plaintiff was required to serve each Defendant with a summons and a copy of the Complaint within 120 days after Plaintiff filed its Complaint. Failure to comply with this requirement or to show good cause for failing to comply requires dismissal of an action without prejudice. Fed. R. Civ. P. 4(m). An individual may be served by: (1) following state law; (2) delivering copies of the documents to the individual personally; (3) leaving copies of the documents at the individual's "dwelling or usual place of abode" with another resident who is "of suitable age and

---

mere causation"); *see also Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 293 (Fla. 2007) (noting that the phrase "contemplates a more attenuated link than the phrase 'because of'").

[9] *See Stillman v. Travelers Ins. Co.*, 88 F.3d 911, 914 (11th Cir. 2013) (finding that district court erred in entering summary in coverage action where the affirmative defenses were not addressed by the parties or the district court).

discretion;" or (4) delivering copies "to an agent authorized by appointment or by law to receive service of process." *See* Fed. R. Civ. P. 4(e). A business entity also may be served by following state law (*see* Fed. R. Civ. P. 4(h)(1)(A)), or by delivering copies of the documents to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" (*see* Fed. R. Civ. P. 4(h)(1)(B)).

Here, Plaintiff filed proofs of service of the Summons and First Amended Complaint as to every Defendant except the Estate Defendants. (*See* Docs. 41–51 ("Proofs"); *see also* Doc. 69 (granting Plaintiff's motion for an extension of time to perfect service on the Estate Defendants).) The Proofs identify former Defendant Justin Infurna (who was voluntarily dismissed from this action (*see* Doc. 87)) as the person who accepted service of the Summons and the First Amended Complaint on behalf of each of the Tier Defendants. (*See* Docs. 41–50.) Although Mr. Infurna appears to be an attorney, there is no indication that service on him constituted valid service on any of the Tier Defendants under Rule 4.[10]

After Plaintiff filed the Proofs, it filed its Second Amended Complaint with a Certificate of Service indicating that the Estate Defendants and One South were served using the Court's electronic filing system, and notice of the electronic filing was provided to "the non-CM/ECF participants." (*See* Doc. 68, p. 11; Doc. 89, p. 20.) Specifically, the "Service" lists identify "John Dobson" as the "Representative" for the Tier Defendants (the "non-CM/ECF participants"). (*See* Doc. 68, p. 12; Doc. 89, p. 21.) It does not appear that

---

[10] Acting pro se, Keith and Romi Mawardi filed Answers to the First Amended Complaint. (*See* Docs. 53, 54.) The docket also includes a document which purports to be a joint Answer to the First Amended Complaint filed by TMG Orange, Scoop, Team Delaware, and Team Florida; however, the signature of the "Authorized Representative" who filed the document is illegible. (*See* Doc. 57.)

11

John Dobson is an attorney licensed in Florida or that he is authorized to appear before this Court; accordingly, he may not represent any Defendant in this action, and service on him is not effective as to the Tier Defendants. *See* Local Rule 2.01 ("No person shall be permitted to appear or be heard as counsel for another in any proceeding in this Court unless first admitted to practice in the Court pursuant to this rule . . . ."); *see also* Local Rule 2.01(e) ("A corporation may appear and be heard only through counsel admitted to practice in the Court . . . .").

As to the Second Amended Complaint, Plaintiff also filed separate proofs of service as to Defendants John Cooley and Samuel Dade. (*See* Docs. 85, 86 ("Second Proofs").) The Second Proofs indicate that: (1) Mr. Dade was served on March 17, 2015, when Konstantin Fedotov left copies of the pertinent documents at a private residence in Apopka, Florida, with "Divine Alleyne" who was "at least 15 years of age" and a co-resident/nephew of Mr. Dade (*see* Doc. 85); and (2) Mr. Cooley was served on March 26, 2015, when Derrick Parisi provided copies of the pertinent documents to Mr. Cooley himself (*see* Doc. 86). Plaintiff then moved for default judgments against Keys and Messrs. Cooley and Dade. (Docs. 94–96 ("Default Motions").) On referral, U.S. Magistrate Judge Karla R. Spaulding, denied the Default Motions without prejudice. (Docs. 97, 98.) In her Order, Judge Spaulding noted Plaintiff's failure to "present any legal authority establishing that" its attempts at service of process were proper.[11] (*See* Doc. 98.)

In short, the record does not indicate that Plaintiff has properly served any of the Tier Defendants with summons and a complaint. Further, more than 270 days have

---

[11] Plaintiff did not file objections to the MJ Orders, and the time to do so has passed. *See* Fed. R. Civ. P. 72.

passed since Plaintiff filed its initial Complaint (Doc. 1), and more than 170 days have passed since Plaintiff filed its Second Amended Complaint (Doc. 68). Thus, the Court will require Plaintiff to show cause why its claims against the Tier Defendants should not be dismissed.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

(1) Axis Surplus Insurance Company's unopposed Motion for Final Summary Judgment (Doc. 89) is **DENIED** with leave to reassert.

(2) On or before July 31, 2015, Axis Surplus Insurance Company is **DIRECTED** to show cause why the Court should not dismiss Plainitff's claims against Defendants TMG Orange Avenue, LLC, Team Market Group, LLC (Delaware), Team Market Group, LLC (Florida), Scoop Bar & Grill, LLC, Keys to the City Global, Inc., Keith Mawardi, Romi Mawardi, John Cooley, and Samuel Dade.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on July 15, 2015.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record

Pro Se Parties